UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DOUGLAS ZIMNY, | ) |
| Plaintiff, | ) |
| v. | ) No. 12 C 5963 |
| | ) Judge Sara L. Ellis |
| COOK COUNTY SHERIFF'S OFFICE, THOMAS DART, in his individual and official capacity, JOSEPH WAYS, SR., GARY HICKERSON, ZELDA WHITTLER, TERRENCE HAKE, RALPH BILLINGSLEA, GEORGE TURNER, in their individual capacities, and the COUNTY OF COOK, a unit of local Government, | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Plaintiff Douglas Zimny, a Lieutenant with the Sheriff's Office, claims that Defendants Cook County Sheriff's Office (the "Sheriff's Office"), the County of Cook (the "County"), Thomas Dart, Joseph Ways, Sr., Gary Hickerson, Zelda Whittler, Terrence Hake, Ralph Billingslea, and George Turner retaliated against him for exercising his First Amendment rights (Count I) and for bringing claims to the *Shakman* compliance monitor in violation of the Illinois Whistleblower Act (the "IWA"), 740 Ill. Comp. Stat. 174/1 *et seq*. (Count II). Defendants have moved to dismiss the Complaint which the Court grants in part and denies in part. Zimny's First Amendment retaliation claims based on alleged retaliatory acts arising after July 30, 2010 survive Defendants' challenges. Because the Court lacks subject matter jurisdiction over Zimny's IWA claims, those claims are dismissed. Additionally, because Zimny's claims against the Sheriff's Office are redundant to the official capacity claims against Sheriff Thomas Dart, the Court dismisses the Sheriff's Office from the case.

# BACKGROUND[1]

Zimny has been employed with the Sheriff's Office since August 16, 1989 and currently holds the rank of Lieutenant. He has an exemplary record with the Sheriff's Office and has received letters and commendations for his outstanding performance as a supervisor. At all relevant times, Zimny satisfactorily fulfilled his assigned duties.

In the 2006 Democratic primary election, Zimny publicly supported Richard Remus over Thomas Dart for the position of Cook County Sheriff, despite warnings from colleagues that support for Remus "would not be good for [Zimny]." Compl. ¶ 31. Indeed, around the time of the election and continuing thereafter, Defendants retaliated against Zimny because he supported Remus in the 2006 elections. This retaliation included denying Zimny a promotion and repeatedly transferring him from his assigned shift.

Under the *Shakman* Decree, the Sheriff's Office is barred from "conditioning, basing or knowingly prejudicing or affecting any term or aspect of government employment, with respect to one who is at the time already a government employee, upon or because of any political reason or factor."[2] *Shakman v. Democratic Org. of Cook County*, 481 F. Supp. 1315, 1358 (N.D. Ill. 1979), *vacated sub nom.*, *Shakman v. Dunne*, 829 F.2d 1387 (7th Cir. 1987). On October 30, 2008, a Supplemental Relief Order ("SRO") was entered that set out a process to adjudicate alleged violations of the *Shakman* Decree. Defs.' Ex. A, Doc. 22-1. The SRO described "the political patronage activities that are prohibited" at the Sheriff's Office and "provide[d]

---

[1] The facts in the background section are taken from the Complaint and are presumed true for the purpose of resolving Defendants' motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). A court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment. *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009). Where a document is referenced in the Complaint and central to Zimny's claims, however, the Court may consider it in ruling on the motion to dismiss. *Id.* The Court may also take judicial notice of matters of public record. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997).

[2] There are limited exceptions that are not relevant here.

procedures for addressing alleged *Shakman* violations occurring both before and after the entry of the SRO." *Maxwell v. County of Cook*, No. 10 CV 00320, 2011 WL 4639530, at *4 (N.D. Ill. Mar. 17, 2011). Present and past Sheriff's Office employees were directed to use the SRO's claims procedures to seek a monetary award for alleged *Shakman* Decree violations that predated the SRO's entry. *Id.* This claims procedure was the "sole recourse for individuals seeking to enforce the [*Shakman* Decree] for violations" predating October 30, 2008. Defs.' Ex. A, Doc. 22-1 at 19. Those employees who believed they were victims of political retaliation before this date and wanted to file a "separate lawsuit under a theory of relief *other* than a violation of the [*Shakman* Decree]" were required to submit an "Opt-Out Request" no later than February 27, 2009. *Id.* (emphasis added). Employees who failed to opt-out lost their right to file suit to pursue claims of political discrimination predating final approval of the SRO. *Id.*

Following the SRO's procedures, Zimny filed a *Shakman* complaint on February 25, 2009, complaining that he was denied a promotion to the Sheriff's Police, a preferred unit at the Sheriff's Office, as a result of his support for Remus in the 2006 election. In March 2010, judgment was entered in Zimny's favor, and in May 2010, Zimny received a monetary award.

This award, however, did not bring an end to the retaliation to which Zimny was subjected. Since receiving the *Shakman* award on May 12, 2010, Zimny has been denied a promotion to Commander and had various Office of Professional Review ("OPR") investigations reopened despite being previously dismissed. Billingslea also subjected Zimny to multiple hours of interrogation on September 11, 2011 with respect to one of the OPR investigations and de-deputized him in violation of the Sheriff's Office Collective Bargaining Agreement on October 5, 2011. On January 12, 2012, Zimny was notified of a recommendation of termination pursuant to the reopened disciplinary charges and was thereafter served with charges seeking his

3

termination on February 27, 2012. At a March 14, 2012 OPR hearing on another disciplinary charge, Hake and Ways refused to allow both Zimny's attorney and union representative to appear despite their presence being authorized by the Collective Bargaining Agreement and *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 95 S. Ct. 959, 43 L. Ed. 2d 171 (1975).

On March 17 and 18, 2012, Zimny reported the ongoing harassment and retaliation to Dart and the Sheriff's Office command staff but received no response. On March 26, 2012, Zimny learned that he had been removed from consideration for promotion to Commander, allegedly because of an attendance problem. Defendants refused to provide Zimny with any documentation of this attendance problem, leaving Zimny without the ability to dispute the allegation of having an attendance problem. On April 24 and May 7, 2012, Zimny made requests to be re-deputized, but both Ways and Hickerson have left those requests unanswered.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction has the burden of proof. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). The standard of review for a Rule 12(b)(1) motion to dismiss depends on the purpose of the motion. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction (a facial challenge), the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See Apex Digital, Inc.*, 572 F.3d at 443–44; *United Phosphorus*, 322 F.3d at 946. If, however, the defendant denies or controverts the truth of the jurisdictional allegations (a factual challenge), the Court may look beyond the pleadings and

4

view any competent proof submitted by the parties to determine if the plaintiff has established jurisdiction by a preponderance of the evidence. *See Apex Digital*, 572 F.3d at 443–44; *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

**I. First Amendment Retaliation Claims (Count I)**

**A. Pre-SRO Claims**

Defendants argue that all of Zimny's claims concerning retaliation that occurred before entry of the SRO on October 30, 2008 should be dismissed because Zimny took advantage of the SRO process and obtained relief for these pre-SRO claims, thus relinquishing his right to bring suit in federal court. *See* Defs.' Ex. A, Doc. 22-1 at 19 (claims procedure is the "sole recourse for individuals seeking to enforce the [*Shakman* Decree] for violations" predating October 30, 2008 unless an individual opted-out of it). Defendants alternatively argue that Zimny's pre-SRO

5

claims in Count I are time-barred. In response, Zimny acknowledges that the SRO deprives the Court of subject matter jurisdiction over his pre-SRO claims but contends that the facts arising prior to October 30, 2008 are relevant to "support [his] timely claims and to explain [his] protected conduct." Pl.'s Resp. at 4–5. Thus, the parties agree that Zimny cannot recover for any claims that arose prior to October 30, 2008 and any such claims are dismissed. Nonetheless, as Zimny points out, the facts recounted in the Complaint that pre-date the entry of the SRO remain relevant to provide background for any timely claims over which the Court has subject matter jurisdiction. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002) (the statute of limitations does not bar an employee from using prior acts as background evidence in support of a timely claim); *O'Neal v. City of Chicago*, 588 F.3d 406, 409 (7th Cir. 2009) (permitting plaintiff police officer to use time-barred claims of discrimination as "background evidence" for timely claims).

### B. Post-SRO Claims

Defendants next argue that certain of Zimny's post-SRO claims are time-barred under the statute of limitations. The statute of limitations is an affirmative defense that need not be anticipated in the complaint in order to survive a motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). But that is not the case where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint reveals that an action is untimely under the governing statute of limitations." *Id.*; *see also Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (considering statute of limitations defense on motion to dismiss where relevant dates were set forth in the complaint). Section 1983 claims are governed by the forum state's statute of limitations for personal injury claims, in this case, two years. *Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001); 735 Ill. Comp. Stat. 5/13–202.

Although the statute of limitations is borrowed from state law, federal law determines when a § 1983 claim accrues. *Wallace v. Kato*, 549 U.S. 384, 388, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007). Under federal law, § 1983 claims accrue when a plaintiff knows or has reason to know that his constitutional rights have been violated. *Wilson v. Giesen*, 956 F.2d 738, 741 (7th Cir. 1992). Zimny filed his Complaint on July 30, 2012. Because Zimny would have known of his injury at the time that each retaliatory act occurred, *see Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 419, 125 S. Ct. 2444, 162 L. Ed. 2d 390 (2005), any claims for relief based on retaliatory acts that pre-date July 30, 2010 (two years before Zimny filed suit) are time-barred. *See also Morgan*, 536 U.S. at 114 (retaliatory adverse employment decisions are discrete acts and only actionable if they "'occurred' within the appropriate time period"); *Barth v. Vill. of Mokena*, No. 03 C 6677, 2006 WL 862673, at *23–24 (N.D. Ill. Mar. 31, 2006) (considering discrete acts of First Amendment retaliation falling within two year statute of limitations).

### C. The Merits of Zimny's First Amendment Retaliation Claims

Defendants further contend that Zimny has failed to allege a *prima facie* case of First Amendment retaliation. The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." U.S. Const. amend. I. "An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). To establish a *prima facie* case of First Amendment retaliation, Zimny must allege that "(1) his speech was constitutionally protected; (2) he has suffered a deprivation likely to deter free speech; and (3) his speech was at

7

least a motivating factor in [Defendants'] actions." *Peele v. Burch*, 722 F.3d 956, 959 (7th Cir. 2013) (quoting *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012)).

Defendants do not challenge the first or second elements.[3] They instead concentrate on the third element, arguing that Zimny "has failed to allege any factual allegations that establish each individual Defendant *knew* of his support of Remus, his filing of a *Shakman* complaint or his receipt of a monetary award from the SCA." Defs.' Mem. at 10. Defendants could not have been motivated to retaliate against Zimny if they were not aware of his protected speech. *See Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1008 (7th Cir. 2000) ("[A]n employer cannot retaliate when it is unaware of any complaints"). But, drawing all inferences in Zimny's favor, as required in ruling on a motion to dismiss, the Complaint can be read to sufficiently allege knowledge of the protected conduct. Zimny alleges that "Defendants have manufactured charges against [him] and others to retaliate against them for their political affiliation and/or complaints of political discrimination and retaliation." Compl. ¶ 75. Although vague, when taken in connection with other allegations, this suggests that Defendants individually knew of Zimny's political affiliation, his support for Remus, his *Shakman* complaint, and his *Shakman* award. Although it may come to light that certain Defendants were not aware of Zimny's allegedly protected conduct or their action was not motivated by this protected conduct, such issues are better left for decision at the summary judgment stage on a more developed factual record.

---

[3] The Complaint suggests that both Zimny's support for Remus and his *Shakman* complaint are protected speech. Compl. ¶¶ 84–85. In his Response to the Motion to Dismiss, Zimny focuses solely on the *Shakman* complaint and award. Pl.'s Resp. at 8–9. Because Defendants have not challenged this element, the Court proceeds on the assumption that Zimny has sufficiently alleged constitutionally protected speech and will analyze whether the third challenged element is met with respect to either instance of allegedly protected speech.

### D. Dart and Whittler's Personal Involvement

Defendants also argue that Dart (in his individual capacity) and Whittler should be dismissed from the suit because Zimny has failed to allege facts demonstrating their personal involvement in the alleged First Amendment retaliation. Section 1983 does not allow for claims based on *respondeat superior*. *King v. Kramer*, 680 F.3d 1013, 1020 (7th Cir. 2012). Instead, a supervisor may be held liable only if he or she "was personally involved in the wrongful conduct such that he or she caused or participated in the alleged violation." *Boyce v. Moore*, 314 F.3d 884, 888 (7th Cir. 2002).

In his Complaint, Zimny alleges that Whittler "signed off on the . . . recommendation to the Sheriff to seek Lieutenant Zimny's termination" and "did absolutely no investigation into [his] complaints . . . that he was being retaliated against by the OPR investigation." Compl. ¶¶ 55, 73. Zimny also alleges generally that "Defendants manufactured charges against [him] and others to retaliate against them for their political affiliation and/or complaints of political discrimination and retaliation." *Id.* ¶ 75. These facts as alleged permit an inference of personal involvement by Whittler in at least some of the actionable retaliatory employment actions, allowing Zimny's claim against Whittler to proceed. *See Harris v. Illinois*, 753 F. Supp. 2d 734, 739 (N.D. Ill. 2010) ("Although Harris may not be able to establish Sigler and Denning's personal involvement in each instance of retaliation or discrimination she complains of, drawing all inferences in her favor at this stage, she has sufficiently alleged that Sigler and Denning were involved in some capacity in the actions at issue.").

Similarly, Zimny's allegations regarding Dart's personal involvement are sufficient to allow Zimny to proceed against Dart in his individual capacity. The Complaint sets forth specific allegations against Dart, detailing his acquiescence to or knowledge of efforts to reopen

9

old disciplinary cases in retaliation for Zimny's protected speech. *See* Compl. ¶¶ 59, 76, 77. Zimny also alleges that Dart was personally aware of the ongoing retaliation and harassment but failed to investigate or curtail the offending activity. *Id.* ¶¶ 66–67, 73. Furthermore, Zimny alleges that Dart refused to provide him with paperwork to substantiate the pending termination charges against him. *Id.* ¶ 69–70. Taken as a whole, this is sufficient at this stage to establish that Dart "knowingly, willfully, or at least recklessly caused the alleged deprivation by his action or failure to act." *See Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986).

### E. *Monell* Claims

Finally, Defendants seek dismissal of Zimny's First Amendment retaliation claims against Dart in his official capacity, the Sheriff's Office, and the County. Zimny may hold these entities and Dart in his official capacity liable under § 1983 when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Liability may be based on (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policy making authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000).

Zimny argues that he has sufficiently alleged his *Monell* claims under the second and third avenues of liability. Defendants dispute whether Zimny has properly alleged a widespread policy or practice so as to proceed under the second avenue but acknowledge that Zimny has stated a *Monell* claim under the third avenue. *See* Defs.' Reply at 6 ("In fact, Defendants

concede the allegations that individual Defendants were policy and decision makers establish, for purposes of these pleadings, a path to *Monell* liability."). Thus, Zimny may proceed with his *Monell* claim.[4]

## II.    IWA Claims (Count II)

Defendants argue that Zimny's claims under the IWA are preempted by the terms of the Illinois Human Rights Act ("IHRA"), 775 Ill. Comp. Stat. 5/1-101 *et seq*.[5] The IHRA sets forth a "comprehensive scheme of remedies and administrative procedures" to address alleged human rights violations. *Mein v. Masonite Corp.*, 485 N.E.2d 312, 315, 109 Ill. 2d 1, 92 Ill. Dec. 501 (1985). This "comprehensive scheme" is the "exclusive source for redress of human rights violations" under Illinois law. *Id.* Specifically, the IHRA states that "[e]xcept as otherwise provided by the law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 Ill. Comp. Stat. 5/8–111(D). "This provision divests courts, both state and federal, of jurisdiction to hear state law claims of civil rights violations unless those claims are brought under the IHRA." *Bell v. LaSalle Bank N.A./ABN AMRO N.A., Inc.*, No. 03 C 0607, 2005 WL 43178, at *2 (N.D. Ill. Jan. 10, 2005); *see Talley v. Wash. Inventory Serv.*, 37 F.3d 310, 312 (7th Cir. 1994) ("[I]n light of the Illinois Human Rights Act, courts have no jurisdiction to hear independent actions for human rights violations.").

---

[4] Because Defendants have conceded that Zimny has a proper *Monell* claim under the third avenue of liability, the Court will not address whether he has sufficiently alleged a widespread policy or practice.

[5] Defendants argue that the IWA claims should be dismissed pursuant to Rule 12(b)(1). Zimny responds that preemption is an affirmative defense that does not bear on the Court's subject matter jurisdiction. Courts in the Seventh Circuit have considered IHRA preemption under both Rule 12(b)(1) and Rule 12(b)(6). *See Hardwick v. Milton*, No. 10-2149, 2011 WL 1331880, at *5 (C.D. Ill. Mar. 16, 2011) (collecting cases). In this case, the Court's analysis would be the same under either standard. *Id.*

To determine whether a claim is preempted by the IHRA, the Court must decide whether the claim is "inextricably linked" to an alleged violation of an employee's civil rights under the IHRA. *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23, 177 Ill. 2d 511, 227 Ill. Dec. 98 (1997); *Krocka v. City of Chicago*, 203 F.3d 507, 516–17 (7th Cir. 2000). A claim is not inextricably linked to a civil rights violation if the plaintiff can allege its elements "without reference to legal duties created by the [IHRA]." *Maksimovic*, 687 N.E.2d at 23. Here, however, Zimny has failed to allege facts sufficient to establish the elements of any common law tort "without reference to legal duties created by the [IHRA]." *Id.* Zimny alleges that Defendants "sought termination of [his] employment and retaliated against him in the terms and conditions of his employment because [he] had reported violations of state or federal law, rule or regulation to the *Shakman* monitor." Compl. ¶ 92. In this case, as was the case in *Bell*, the IHRA "furnished the legal duty that the defendant was alleged to have breached." *Maksimovic*, 687 N.E.2d at 23; *Bell*, 2005 WL 43178, at *2–3. The IHRA expressly bars employers from

> [r]etaliat[ing] against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination . . . or because he or she has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under [the IHRA].

775 Ill. Comp. Stat. 5/6–101(A). But for Zimny's reasonable, good-faith belief that Defendants retaliated against him and violated his civil rights as secured by the IHRA, he would have no claim under the IWA. *See Bell*, 2005 WL 43178, at *2. Therefore, Zimny's claim under the IWA is inextricably linked to an alleged civil rights violation and is preempted by the IHRA.

### III. Sheriff's Office as a Defendant

Finally, the Sheriff's Office argues that it should be dismissed because it is not a legal entity capable of being sued. This argument is one that is sometimes, but not always, raised by

the Sheriff's Office, with a number of cases in this District proceeding against the Sheriff's Office past the motion to dismiss stage. The cases in this District are split, with some finding that the proper defendant is the Sheriff of Cook County, Dart, and not the Sheriff's Office, *see, e.g.*, *Whitted v. Cook County Sheriff's Office*, No. 12 C 2461, 2013 WL 4840488, (N.D. Ill. Sept. 10, 2013), and others concluding that the Sheriff's Office itself may be sued, *see, e.g.*, *Leinenweber v. DuPage County*, No. 08 CV 3124, 2009 WL 458622, at *3 (N.D. Ill. Feb. 23, 2009). The distinction makes little difference here, however, as Dart is already sued here in his official capacity. *See Newell v. Kankakee County Sheriff's Dep't*, 968 F. Supp. 2d 973, 977 (C.D. Ill. 2013) (whether suable entity was Sheriff's Office or Sheriff's Department would make little difference where the Sheriff was sued in his official capacity). A claim against Dart in his official capacity is tantamount to a claim against the governmental entity itself. *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007). The presence of the Sheriff's Office, if it is indeed a proper legal entity, would be redundant in this case. Thus, the Sheriff's Office is dismissed. Zimny can pursue his claims against the Sheriff's Office by way of his official capacity claims against Dart.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss [21] is granted in part and denied in part. Zimny's IWA claims (Count II) are dismissed. The Cook County Sheriff's Office is dismissed as a Defendant. Zimny may not pursue any First Amendment retaliation claims for retaliatory acts that arose prior to July 30, 2010. The remaining Defendants have until September 30, 2014 to answer the Complaint.

Dated: September 15, 2014

SARA L. ELLIS
United States District Judge